STATE of Wisconsin,
Plaintiff-Appellant,

v.

Dimitri HENLEY,
Defendant-Respondent.

Supreme Court

*No. 2008AP697. Decided November 25, 2009.*

2010 WI 12

(Also reported in 778 N.W.2d 853.)

Before Patience Drake Roggensack, J.

¶ 1. Dimitri Henley (Henley) has moved me to disqualify/recuse myself from continued participation in the above-captioned action, pursuant to Wis. Stat. § 757.19(2)(e) and (g) (2007–08)[1] and SCR 60.04(4). In regard to all three bases for disqualification/recusal, Henley claims that because I participated in the court of appeals panel that decided *State v. Adams,* No. 2002–0039–CR, unpublished slip op. (Wis. Ct. App. Nov. 7, 2002),[2] even though I did not participate in Henley's appeal, *State v. Henley,* No. 2001–2768–CR, unpublished slip op. (Wis. Ct. App. Oct. 10, 2002),[3] I am

---

[1] All subsequent references to the Wisconsin Statutes are to the 2007–08 version unless otherwise indicated.

[2] *State v. Adams,* No. 2002–0039–CR, unpublished slip op. (Wis. Ct. App. Nov. 7, 2002), was decided by a panel consisting of Judges Dykman, Vergeront and Roggensack.

[3] *State v. Henley,* No. 2001–2768–CR, unpublished slip op. (Wis. Ct. App. Oct. 10, 2002), was decided by a panel consisting of Judges Dykman, Vergeront and Deininger.

disqualified by law from participating in the pending proceeding involving Henley.[4]

■ ■ Henley contends that because he and Adams were co-defendants during the trial of the underlying action, even though the appeals of their convictions proceeded separately and were decided by two different appellate judge panels, my participation in Adams' appeal causes the pending proceeding to come within the directive of Wis. Stat. § 757.19(2)(e) that prohibits an appellate judge from subsequent participation if he/she "handled the action or proceeding" while a judge of an "inferior court." He also contends that, based on the same set of facts, I should conclude that my recusal is required by Wis. Stat. § 757.19(2)(g) and SCR 60.04(4) due to the appearance of partiality that he claims my participation in the appeal in *State v. Adams* produces. And finally, Henley asserts that he was unaware of my participation in the court of appeals decision in *State v. Adams* until recently, and that as soon as he learned of it, he brought the present motion. Therefore, he contends that he has not waived his objection to my continued participation in this proceeding.

■

¶ 3. I agree with Henley that no waiver of objection occurred here. I was as unaware as he that I had participated in *State v. Adams* while a court of appeals judge.[5] I appreciate his bringing this interesting question to my attention. Further, based upon my research into the meaning of Wis. Stat. § 757.19(2)(e) and (g) and

---

[4] I served as a judge on District IV of the Wisconsin Court of Appeals from August 1, 1996 until July 31, 2003.

[5] During the seven years in which I served as a Wisconsin Court of Appeals judge for District IV, more than 2,100 cases were decided by various panels of District IV judges.

6

SCR 60.04(4), and the application of those provisions to the facts that give rise to Henley's motion, I conclude that I am not precluded by law from participation in the above-captioned matter. Accordingly, I deny Henley's motion for my disqualification/recusal in the pending review.

## I. BACKGROUND

¶ 4. Henley, Adams and another man were charged with numerous counts of sexual assault for events that were alleged to have occurred with a single victim in her college dormitory room. Their first trial ended when the circuit court granted a mistrial. At the second trial, only Henley and Adams were defendants and both were convicted of the commission or conspiracy to commit five counts of second-degree sexual assault, by use of force or violence, pursuant to Wis. Stat. § 940.225(2)(a). Each was sentenced to significant time in prison.

¶ 5. Although Henley and Adams were tried together, they filed separate appeals, and they proceeded separately thereafter. Henley and Adams were represented by separate counsel during the course of their appeals. Henley's conviction was affirmed on appeal,[6] as was Adams'.[7]

¶ 6. Henley then filed a petition for writ of habeas corpus in the United States District Court for the Western District of Wisconsin. His petition for writ was denied, and Henley did not appeal that decision.

¶ 7. Adams filed a petition for writ of habeas corpus in the United States District Court for the East-

---

[6] *State v.* Adams, No. 2002–0039–CR, unpublished slip op. (Wis. Ct. App. Nov. 7, 2002).

[7] *State v. Henley,* No. 2001–2768–CR, unpublished slip op. (Wis. Ct. App. Oct. 10, 2002).

ern District of Wisconsin. His petition also was denied. However, Adams appealed the denial of his habeas petition to the United States Court of Appeals for the Seventh Circuit. The Seventh Circuit concluded as follows: the evidence established use of force and threat of force; the evidence established lack of consent; defense counsel's failure to seek a jury instruction for a lesser included offense was reasonable; defense counsel's failure to more vigorously cross-examine the victim was reasonable, but defense counsel was deficient "by not locating and talking to [Shawn] Demain, who could have conceivably served as a witness on Adams's behalf." *Adams v. Bertrand*, 453 F.3d 428, 433–35 (7th Cir. 2006). The Seventh Circuit also concluded that prejudice existed because Adams' counsel did not "investigate [or] call Demain." *Id.* at 438. Based on its conclusion that ineffective assistance of counsel had prejudiced Adams, the Seventh Circuit reversed Adams' conviction and remanded the matter to state court. *Id.* The Jefferson County District Attorney chose not to re-try Adams.

¶ 8. Henley then moved the Jefferson County Circuit Court for a new trial in the interests of justice, based on the Seventh Circuit's decision in Adams' habeas appeal. The Jefferson County Circuit Court granted Henley's motion, the State appealed, and the court of appeals certified the case. We accepted certification and heard oral argument on the State's appeal on October 20, 2009.

## II. DISCUSSION

### A. General Principles

¶ 9. A decision on Henley's disqualification/ recusal motion requires me to interpret and to apply Wis.

8

Stat. § 757.19(2)(e) and (g) and SCR 60.04(4). Questions of statutory interpretation and application are questions of law. *Watton v. Hegerty,* 2008 WI 74, ¶ 14, 311 Wis. 2d 52, 751 N.W.2d 369. The interpretation and application of Supreme Court Rules also are questions of law. *Filppula-McArthur v. Halloin,* 2001 WI 8, ¶ 32, 241 Wis. 2d 110, 622 N.W.2d 436.

¶ 10. Statutory interpretation begins with the words chosen by the legislature in order to determine the meaning of the statute. *State ex rel. Kalal v. Circuit Court for Dane County,* 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. In addition, the meaning of a statute may be ascertained from the context in which those words are used. *Id.,* ¶ 46. If the words chosen by the legislature demonstrate a "plain, clear statutory meaning," without ambiguity, the statute is applied according to that plain meaning. *Id.* However, if a statute is "capable of being understood by reasonably well-informed persons in two or more senses[,]" then the statute is ambiguous. *Id.,* ¶ 47. When a statute is ambiguous, we may consult extrinsic sources in an attempt to discern its meaning. *Id.,* ¶¶ 48, 50. Although extrinsic sources are usually not consulted if the statutory language clearly sets forth the meaning of the statute, we may nevertheless examine extrinsic sources "to confirm or verify a plain-meaning interpretation." *Id.,* ¶ 51.

¶ 11. We interpret Supreme Court rules in a similar fashion, beginning with the words chosen for the rule. *See In re Disciplinary Proceedings Against Trewin,* 2004 WI 116, ¶ 38, 275 Wis. 2d 116, 684 N.W.2d 121; *In re Disciplinary Proceedings Against Marcus,* 107 Wis. 2d 560, 576, 320 N.W.2d 806 (1982).

## B. Wisconsin Stat. § 757.19(2)(e)

¶ 12. Henley's motion asserts that because I participated in the court of appeals panel that decided the appeal in *State v. Adams* that I am disqualified by law from further participation in *State v. Henley,* according to the provisions of Wis. Stat. § 757.19(2)(e). Section 757.19 provides in relevant part:

> (2) Any judge shall disqualify himself or herself from any civil or criminal action or proceeding when one of the following situations occurs:
>
> . . .
>
> (e) When a judge of an appellate court previously handled the action or proceeding while judge of an inferior court.

¶ 13. As a court of appeals judge, I did not participate in Henley's appeal.[8] However, the question Henley now raises is whether I "previously handled the action or proceeding," as that phrase is used in Wis. Stat. § 757.19(2)(e), because I participated in *State v. Adams.* Henley asserts that I fall within the proscription of the statute because Henley's and Adams' appeals arose out of a trial in which they were co-defendants and their appeals contained similar issues. Henley's assertion presents an issue of first impression in regard to the meaning of § 757.19(2)(e).

¶ 14. In order to answer the question Henley poses, I begin by examining the statutory term, "action or proceeding," in the context in which it is used. *See Kalal,* 271 Wis. 2d 633, ¶ 46. The term "action or

---

[8] *Id.*

10

proceeding" is used in more than one place in Wis. Stat. § 757.19. For example, the prefatory language of subsection (2) states in relevant part, "shall disqualify himself or herself from any civil or criminal *action or proceeding* when one of the following situations occurs." (Emphasis added.) The list of circumstances that follows that prefatory language uses "action or proceeding" in two places: paragraphs (2)(c) and (2)(e).

¶ 15. The meaning of "action or proceeding" in the prefatory language conditions all of the paragraphs of subsection (2) that follow. The prefatory language must refer to the matter then pending before the court, otherwise there would be no occasion to apply the directives of Wis. Stat. § 757.19. For example, if it were not the then pending matter to which "action or proceeding" referred, subsection (2) and the subsequent provision on waiver in subsection (3), would have no application. Stated otherwise, if "action or proceeding" in the prefatory language of subsection (2) did not refer to the action currently pending before a court, there would be no need to address a potential waiver in order to enable an otherwise disqualified judge to participate in that action or proceeding.

¶ 16. In paragraph (2)(c), the term "action or proceeding" is also employed as a directive for the disqualification of a judge. Paragraph (2)(c) provides: "When a judge previously acted as counsel to any party in the same action or proceeding." Although paragraph (2)(c) has not been interpreted, its predecessor statute, Wis. Stat. § 256.19 (1969),[9] has been interpreted. *Sturdevant v. State,* 49 Wis. 2d 142, 181 N.W.2d 523 (1970). In

---

[9] Wisconsin Stat. § 256.19 (1969) provided in relevant part:

In case any judge of any court of record . . . shall have acted as attorney or counsel for either of the parties thereto such judge

*Sturdevant,* we interpreted "action," the term then used in § 256.19, and concluded that participation of a judge was precluded only if the judge had acted as counsel "for either of the parties to the action or proceeding in the matter so to be heard or determined." *Id.* at 145 (quoting *State ex rel. Rowell v. Dick,* 125 Wis. 51, 58, 103 N.W. 229 (1905)). Henley has provided no reason to interpret the term "action or proceeding" in paragraph (2)(c) differently than "action" was interpreted in *Sturdevant,* and I have found none.

¶ 17. In Wis. Stat. § 757.19(2)(e), raised by Henley, the relevant phrase is "previously handled the action or proceeding." The plain meaning of the relevant term encompasses only the case of *State v. Henley* because a judge could not have previously handled *State v. Henley* unless he had participated in it during an earlier stage of the litigation. Further, my reading of paragraph (2)(e) is consistent with the meaning of "action or proceeding" in other parts of § 757.19, which is the context in which the term is found. *See Kalal,* 271 Wis. 2d 633, ¶ 46.

¶ 18. My conclusion that "action or proceeding" refers only to the case before the court as that case proceeded through the judicial system is also consistent with the use of the term "action or proceeding" in other statutes. For example, Wis. Stat. § 809.15, which addresses the record on appeal, provides in relevant part:

(1) Composition of record. (a) The record on appeal consists of the following unless the parties stipulate to the contrary:

shall not have power to hear and determine such action or proceeding or to make any order therein, except with the consent of the parties thereto.

 1. The paper by which the *action or proceeding* was commenced.

(Emphasis added.) It would contravene common sense to conclude that the "action or proceeding" referred to in subdivision (1)(a)1. of § 809.15 refers to an action or proceeding other than the one then pending on appeal.[10]

¶ 19. One could argue that because the term, "same" precedes "action or proceeding" in paragraph (2)(c) and the word "the" precedes "action or proceeding" in paragraph (2)(e) that paragraph (2)(e) refers to a broader category of matters than does paragraph (2)(c). However, I conclude that the term "same" in paragraph (2)(c) is a codification of the limitation set out in *Sturdevant*. What is more persuasive, however, is that because "action or proceeding" in (2)(e) is preceded by the phrase, "previously handled the," the statutory directive includes only those occasions where the appellate judge previously participated in the action or proceeding then pending before the court when disqualification/recusal is sought.

¶ 20. Even though I have interpreted Wis. Stat. § 757.19(2) through a plain meaning analysis, my interpretation also is supported by the legislative history underlying § 757.19. Wisconsin Stat. § 256.19 (1977) was the immediate predecessor of § 757.19; it contained all of the substantive provisions on judicial disqualification that are found in § 757.19(2).

¶ 21. Wisconsin Stat. § 256.19 (1977) was created by the laws of 1977, with the assistance of the Judicial

---

 [10] *See also* the use of "action or proceeding" in Wis. Stat. § 801.58(4) addressing "Substitution of judge" in civil actions; Wis. Stat. § 799.205(1) addressing "Substitution of judge" in small claims actions.

13

Council. Minutes of Judicial Council, Dec. 19, 1975. The Judicial Council Committee on Judge Substitution and Court Commissioners reviewed the statutes of all states then having a judicial self-disqualification statute and its survey identified ten "significant criteria for disqualification." Richard R. Malmgren memorandum, Sept. 19, 1975.

¶ 22. Paragraph (2)(e) of Wis. Stat. § 757.19 began as the tenth criterion identified by the Judicial Council Committee. As initially phrased by Mr. Malmgren, the tenth disqualification criterion read: "A member of a state appellate court cannot deliberate upon a case in which he was previously the trial judge." *Id.* at 2. The Committee then revised this criterion to the language presently appearing in Wis. Stat. § 757.19(2)(e). Minutes of Judicial Council, Dec. 19, 1975.

¶ 23. The legislative history shows that the limitation that was provided through the language "previously handled the action or proceeding," employed in paragraph (2)(e) is directed at the action or proceeding in which the judge previously participated. Accordingly, I conclude that disqualification/recusal is directed under Wis. Stat. § 757.19(2)(e) only when the same defendant in the action or proceeding on which an appellate judge has already participated as a judge is once again before a court on which the same judge is serving.

C. Wisconsin Stat. § 757.19(2)(g)

¶ 24. Henley also asserts that even if I am not required to disqualify/recuse myself under Wis. Stat. § 757.19(2)(e), I should nevertheless do so under Wis. Stat. § 757.19(2)(g). Paragraph (2)(g) provides in relevant part:

14

(2) Any judge shall disqualify himself or herself from any civil or criminal action or proceeding when one of the following situations occurs:

. . .

(g) When a judge determines that, for any reason, he or she cannot, or it appears he or she cannot, act in an impartial manner.

The focus of paragraph (2)(g), when applied to an appellate judge, is that the judge should determine whether some circumstance causes the judge to conclude that he or she cannot, or that it appears to the judge that he or she cannot, act in an impartial manner in an appeal. *Donohoo v. Action Wis., Inc.,* 2008 WI 110, ¶ 24, 314 Wis. 2d 510, 754 N.W.2d 480 (citing *State v. Am. TV & Appliance of Madison, Inc.,* 151 Wis. 2d 175, 182–83, 443 N.W.2d 662 (1989)).

¶ 25. I have never participated in any action or proceeding involving Henley. That I may have considered issues similar to those involved in Henley's appeal before the Wisconsin Court of Appeals is too broad a category to cause me to conclude that I will not address the issues in the State's appeal that is now before us in a fair and impartial manner. I have considered thousands of issues since I became an appellate judge in 1996. Some issues I probably have considered many times. Such is the nature of appellate judging, but that is no basis from which I can conclude that I am disqualified by law from participation in the certification of the State's appeal.

D. Supreme Court Rule 60.04(4)

¶ 26. Henley also asserts that I am disqualified from further participation under Supreme Court Rule

15

60.04(4). He cites only the preamble and not any of the particular paragraphs of SCR 60.04(4). Motion for Disqualification and or Recusal of Justice Roggensack on Statutory Grounds, ¶ 4. The part of the SCR Henley relies on provides:

> Except as provided in sub. (6) for waiver, a judge shall recuse himself or herself in a proceeding when the facts and circumstances the judge knows or reasonably should know establish one of the following or when reasonable, well-informed persons knowledgeable about judicial ethics standards and the justice system and aware of the facts and circumstances the judge knows or reasonably should know would reasonably question the judge's ability to be impartial[.]

¶ 27. This part of SCR 60.04(4) is similar to Wis. Stat. § 757.19(2)(g), except that it could be read to include both a subjective and an objective test for the judge to apply, i.e., when "the judge knows or reasonably should know" and when "reasonable, well-informed persons . . . would reasonably question the judge's ability to be impartial." However, it is not necessary that I decide which test to apply because, as I have already explained in my discussion of § 757.19(2)(e), my participation in *State v. Adams* does not fall within the meaning of "previously handled the action or proceeding," which phrase describes the conduct prohibited by paragraph (2)(e). My participation in *State v. Adams* is the only conduct on which Henley bases his motion.

¶ 28. Furthermore, even though I found no case addressing Wis. Stat. § 757.19(2) or SCR 60.04(4) that is bottomed on Henley's assertions, several cases show the thinness of his position. For example, in *State v. O'Neill*, 2003 WI App 73, 261 Wis. 2d 534, 663 N.W.2d 292, the court of appeals considered whether the circuit court's applying a trial procedure to a trial in which

O'Neill was involved violated O'Neill's right to due process of law because the court of appeals had held that same trial procedure could not be applied in an earlier trial in which O'Neill had been a party. *Id.*, ¶ 16. The court of appeals concluded that the circuit court's procedure did not violate O'Neill's rights where that same procedure as had been employed in the first trial was used again. *Id.*, ¶ 20.

¶ 29. In *Voigt v. State*, 61 Wis. 2d 17, 211 N.W.2d 445 (1973), we concluded that Voigt's right to due process was not impaired when a trial judge took the guilty plea of a co-defendant and later acted as the trial judge in Voigt's trial where the former co-defendant testified for the State. *Id.* at 23. And, in *Milburn v. State*, 50 Wis. 2d 53, 183 N.W.2d 70 (1971), we concluded that information concerning the defendant which was received by the trial court in another proceeding did not affect the trial judge's impartiality by "negat[ing] the presumption that the trial judge, in fidelity to his oath of office, will try each case on its merits." *Id.* at 62.

¶ 30. Accordingly, I conclude that there is no basis on which SCR 60.04(4) requires my recusal.

### E. Disqualification/Recusal Policy Concerns

¶ 31. Motions to disqualify a justice of this court from participation in pending cases have become motions de jour. Currently, nine such motions are pending before the court, directed at various justices. While the attorneys practicing before the court assist us in the development of the law when they bring interesting legal issues to us for review, care must be taken by attorneys to thoroughly research the law that underlies any motion. This is no less true when it is a motion for

17

disqualification/recusal of a justice. Such motions raise serious concerns for the justice and institutional concerns for the court.

¶ 32. Concerns similar to mine in regard to disqualification/recusal motions have been expressed by various members of the United States Supreme Court when addressing motions for self-disqualification under 28 U.S.C. § 455, which applies to federal appellate judges. While the wording of § 455 differs considerably from Wis. Stat. § 757.19, § 455, as interpreted by several justices of the United States Supreme Court in regard to motions directed at their own participation, offers some guidance on the concept of judicial self-disqualification for appellate judges and the tensions that can arise under statutes such as Wis. Stat. § 757.19(2). *See, e.g., Laird v. Tatum,* 409 U.S. 824 (1972).

¶ 33. In *Laird,* Justice Rehnquist interpreted the provisions of 28 U.S.C. § 455, as it then appeared, in regard to a motion that he disqualify himself from further participation in the Court's review of *Laird.* He did so upon the allegation that:

> because of testimony which [he] gave on behalf of the Department of Justice before the Subcommittee on Constitutional Rights of the Judiciary Committee of the United States Senate at its hearings on "Federal Data Banks, Computers and the Bill of Rights," and because of other statements [he] made in speeches related to this general subject.

*Id.* at 824–25. Justice Rehnquist acknowledged that there was one reference in *Laird* to his prepared statement to the United States Senate Subcommittee and one other general comment of his as well. *Id.* at 826–27.

¶ 34. However, what is most instructive about *Laird* is not Justice Rehnquist's decision refusing to disqualify himself, *id.* at 836, but rather, his extensive

18

discussion of the tension between the "duty to sit" where not disqualified and the "duty to not sit" where disqualified, *id.* at 837. Justice Rehnquist was particularly concerned with disqualification of a justice of the United States Supreme Court because of the unique nature of the Court. He explained, "[t]here is no way of substituting Justices on this Court as one judge may be substituted for another in the district courts." *Id.* He was troubled by the disqualification of a justice that could result in an equally divided Supreme Court, where "[t]here is no higher court of appeal which may review an equally divided decision of this Court and thereby establish the law for our jurisdiction." *Id.* Justice Rehnquist noted that one of the stated reasons for the Court's granting certiorari "is to resolve a conflict among other federal courts or state courts." *Id.* at 838. An equally divided court created by self-disqualification of one justice would preclude such conflict resolution and could result in "one rule in Athens, and another rule in Rome." *Id.*

¶ 35. The same policy concerns as those Justice Rehnquist discussed must be considered when a justice of this court is asked to disqualify himself or herself. As with the United States Supreme Court, no other judge can replace a justice on the Wisconsin Supreme Court. Therefore, disqualification of one justice could result in an evenly divided supreme court, thereby leaving the State of Wisconsin with no higher court to resolve the legal issue the case presents. Furthermore, as with the United States Supreme Court, one of our criteria for granting review is the need to harmonize conflicts in the law among the branches of the court of appeals. Wis. Stat. § 809.62(1r)(c). An equally divided court created by self-disqualification of one justice could result in one rule of law in Milwaukee and another in Madison.

19

¶ 36. It is a far-reaching duty that we undertake when we take the oath of office to serve as a justice of the Wisconsin Supreme Court. We assume a solemn duty to act in accord with our law-declaring function, unless our disqualification is required by law. Therefore, no justice of the Wisconsin Supreme Court should disqualify himself or herself unless disqualification is *required*. There certainly are times when it would be easier and less hassle for the justice to grant the motion for disqualification/recusal, and at this time in history, simply granting the motion may be the politically correct choice. However, the oath of office requires much more of each justice at whom such a motion is directed.

### III. CONCLUSION

¶ 37. In conclusion, I agree with Henley that no waiver of objection occurred here. I was as unaware as he that I had participated in *State v. Adams* while a court of appeals judge. I appreciate his bringing this interesting question to my attention. Further, based upon my research into the meaning of Wis. Stat. § 757.19(2)(e) and (g) and SCR 60.04(4), and the application of those provisions to the facts that give rise to Henley's motion, I conclude that I am not precluded by law from participation in the above-captioned matter. Accordingly, I deny Henley's motion for my disqualification/recusal in the pending review.